IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| THE KNIT WITH, : | |
| : | CIVIL ACTION |
| Plaintiff, : | |
| : | |
| v. : | |
| : | |
| EISAKU NORO & CO., LTD., : | |
| KNITTING FEVER, INC., : | |
| SION ELALOUF, DIANE ELALOUF, : | NO.  08-4775 |
| and JAY OPPERMAN, : | |
| : | |
| Defendants. : | |

### MEMORANDUM

BUCKWALTER, S.J.                                                                                                  December 19, 2008

       Currently before the Court is the second federal action[1] brought by Plaintiff The Knit With ("The Knit"), against Defendants Knitting Fever, Inc., Sion Elalouf, Diane Elalouf and Jay Opperman (collecting the "Moving Defendants").  In addition, Plaintiffs have named Eisaku Noro & Co, Ltd. as a defendant in this action.

**I.    FACTUAL AND PROCEDURAL HISTORY**

       Plaintiff, The Knit With ("The Knit"), is a small, family owned and operated business, established in 1971, that engages in retail sales to consumers of specialty yarns and accessories, from its location at 8226 Germantown Avenue, Philadelphia, Pennsylvania.  (Compl. ¶ 3.)  Defendant Knitting Fever, Inc. ("KFI") is a New York corporation, existing since 1980, run by Sion Elalouf as the chief executive officer and either the sole or dominant KFI shareholder.  (Id. ¶ 5.)  Defendant Eisaku Noro & Co. Ltd. ("Noro") is a closely held corporation, organized under the

---

[1] The first cause of action is <u>The Knit With v. Knitting Fever, Inc., et al.</u>, Civ. A. No. 08-4221 (E.D. Pa.) ("The Knit I").

laws of Japan, that manufactured the wool products at issue, which were ultimately imported and distributed to Plaintiff by Defendant KFI.  (Id. ¶ 4.)

Beginning on August 20, 1997, KFI commercially supplied Plaintiff with three cashmere content Noro products:  (1) Noro Amagi - sixteen market paks labeled as and represented to be spun of 40% lambswool, 30% cashmere and 30% silk; (2) Noro Cash Iroha - thirty-eight market paks labeled as and represented to be spun of 40% silk, 30% lambswool, 20% cashmere and 10% nylon; and (3) Noro Louts - labeled and represented as spun of 57% rayon, 23% nylon, 12% acrylic, and 8% cashmere.  (Id. ¶¶ 14-15.)  These Noro yarns had a value of approximately $4,000 and were shipped by KFI from its wholesale warehouse in New York to Plaintiff's retail store in Pennsylvania.  (Id. ¶¶ 15-16.)

According to Plaintiff, among the many persons employed by Defendant KFI, only Defendants Sion and Diane Elalouf had access to documents concerning yarns imported and wholesaled by KFI.  (Id. ¶¶ 17-18.)  As such, they could prevent regular KFI employees from learning (a) the invoiced purchase values of goods imported and resold by KFI; (b) the true source of products imported and resold by KFI; and (c) the fiber content of goods imported and resold by KFI.  (Id.)  Plaintiff avers that, by August 20, 1997, Defendants Sion Elalouf, Diane Elalouf and Jay Opperman agreed to sell improperly labeled Noro cashmere yarn products to yarn retailers.  (Id. ¶ 19.)  In furtherance of that scheme, the Defendants caused the labeling of at least two imported Noro yarn products to be changed, adding the Knitting Fever logo to the label.  (Id. ¶ 20.)

At the 2006 trade show for the handknitting yarn trade, rumors began to circulate as to whether a "designer" yarn, imported and distributed solely by KFI and labeled as spun with 12% cashmere, actually contained any cashmere.  (Id. ¶ 21.)  An expert fiber analysis of Debbie Bliss

Cashmerino Chunky (another supposedly cashmere-blend yarn imported by KFI), conducted by K.D. Langley Fiber Services for the Cashmere and Camel Hair Manufacturers' Institute ("CCHMI"), disclosed a zero cashmere content in that product.  (Id. ¶ 21.)

On July 6, 2006, during a purchasing meeting, "a rumor arrived" at Plaintiff's place of business that a designer yarn, identified only as being labeled with a fiber content of 55% merino wool, 33% microfiber, and 12% cashmere, was found to contain no cashmere.  (Id. ¶ 22.)  Upon hearing this rumor, Plaintiff (1) recognized the rumored fiber contact to exactly match the fiber content of two Cashmerino yarns sourced from KFI and inventoried by Plaintiff; (2) immediately, upon advice of counsel, removed from sale the two suspect Cashmerino yarns as either defectively manufactured or improperly labeled; (3) identified seven inventoried yarns labeled as spun of cashmere – with five being sourced from KFI; (4) removed from sale a third Cashmerino product, marketed under the KFI brand name, which matched the exact composition of the yarn rumored to have no cashmere; and (5) before the close of business, removed from sale two more yarns – Amagi and Cash Iroha - marketed under the Noro brandname, also labeled as spun with cashmere and supplied by KFI.  (Id. ¶ 23.)  The following business day, Plaintiff estimated the retail value of the five KFI-sourced yarns removed from sale as approaching $20,000, and decided not to sell these yarns until the fiber content could either by vouched for by the supplier or verified by testing.  (Id. ¶ 24.)

On July 9, 2006, Plaintiff requested that KFI and its other vendors of wool yarns furnish a Wool Products Guaranty of Compliance, verifying that their wool yarns complied with labeling laws.  (Id. ¶ 25.)  Only KFI neither acknowledged nor fulfilled this request.  (Id.)  Three days later, Plaintiff sent samples of the five yarns to K.D. Langley for fiber content analysis –

including the two Noro products, Amagi and Cash Iroha.  (Id. ¶ 26.)  The testing revealed that the three Cashmerino yarns did not contain cashmere, but that the two Noro yarns had an indeterminate amount of cashmere.  (Id.)

Defendant KFI released a three page letter, dated July 20, 2006, which attached four reports of fiber analyses purportedly performed on Debbie Bliss Cashmerino Aran.  (Id. ¶ 27.)  The letter questioned the reliability of the fiber analyses performed by K.D. Langley, and offered to provide retailers whatever information may be required to satisfy concerns about the cashmere content of yarns it supplied commercially.  (Id.)  In response, Plaintiff again requested a Guaranty of Compliance.  (Id. ¶ 28.)  Defendant KFI instead offered to furnish a general letter at some uncertain future date.  (Id.)  Having obtained no assurance from KFI, Plaintiff employed CNR-ISMAC, in Biella, Italy, to perform secondary testing of the Noro yarns should it become necessary.  (Id. ¶ 29.)  Shortly thereafter, Plaintiff identified a third Noro product, Lotus, as spun with a minor quantity of cashmere as its fifth constituent fiber.  (Id. ¶ 30.)  Plaintiff immediately removed this product from sale.  (Id.)

Ultimately, the fiber content analyses of the Noro yarns commissioned by Plaintiff revealed the following:

Langley Analysis

1. Amagi is spun of 17.5% cashmere, but labeled to contain 30% cashmere.

2. Cash Iroha is spun of 12.8% cashmere, but labeled to contain 30% cashmere

3. Lotus is without any cashmere at all, but labeled to contain 8% cashmere.

(Id. ¶ 31.)

CNR-ISMAC Analysis

        1.        Amagi is spun of 25.3% cashmere, but labeled to contain 30% cashmere.

        2.        Cash Iroha is spun of 15.4% cashmere, but labeled to contain 20% cashmere.

        3.        Lotus is spun of 2.1% cashmere, but labeled to contain 8% cashmere.

(Id. ¶ 32.)

Plaintiff initiated the current litigation on October 6, 2008, setting forth the following causes of action: breach of express warranty of merchantability of goods for resale to consumers (Count I); breach of implied warranty of merchantability of goods for resale to consumers (Count II); explicitly false advertising pursuant to the Lanham Act, 15 U.S.C. § 1125(a)(1)(B) (Count III); perfidious trade practices and common law unfair competition (Count IV); civil conspiracy (Count V); and piercing the corporate veil (Count VI). (Id. ¶¶ 35-82.) Thereafter, on November 10, 2008, the Moving Defendants filed the instant Motion to Dismiss.

**II. DISCUSSION**

Moving Defendants' argument is two-fold. First, they seek to dismiss Plaintiff's Lanham Act claim on the grounds that Plaintiff does not have standing to maintain such a claim. Second, they contend that, with the dismissal of Plaintiff's Lanham Act claim, no basis remains for the Court to assert federal subject matter jurisdiction. In turn they assert that the Court should dismiss these state law claims pursuant to 28 U.S.C. § 1367(c)(3).

Plaintiff's Lanham Act claim is identical to and challenges the same conduct as the Lanham Act cause of action brought against Defendant KFI in the The Knit I. See Complaint, The Knit With v. Knitting Fever, Inc., Civ. A. No. 08-4221 (E.D. Pa. Sep. 2, 2008). In The Knit I, the same Moving Defendants sought to dismiss that claim also based on the absence of standing. Via a Memorandum Opinion dated December 18, 2008, the Court fully and thoroughly discussed the

issue, reasoning that Plaintiff did not possess prudential standing sufficient to permit it to pursue a Lanham Act claim against Moving Defendants.  Memorandum and Order, The Knit With v. Knitting Fever, Inc., Civ. A. No. 08-4221, 12-33 (E.D. Pa. Dec. 18, 2008).  The briefs now submitted by parties with respect to the pending Motion to Dismiss present no new arguments and, in fact, are virtually verbatim copies of the briefs submitted in the The Knit I.  Seeing no reason to duplicate the previous discussion, the Court incorporates by reference our reasoning and conclusion into this Opinion.  In turn, we grant the Moving Defendants' Motion to Dismiss the Lanham Act claim.

Moving Defendants also ask the Court to dismiss the remaining state law claims pursuant to 28 U.S.C. § 1367(c)(3).[2]  More specifically, they contend that with the dismissal of the Lanham Act claim, only state law causes of action remain.[3]  As the Complaint pleads only federal question jurisdiction (Compl. ¶ 9), Moving Defendants argue that the Court must decline to exercise supplemental jurisdiction over the state law claims.

While Moving Defendants are correct that federal question jurisdiction, under 28 U.S.C. § 1331, no longer exists, the Court nonetheless declines to dismiss the state law claims for lack of subject matter jurisdiction.  The "general rule" is that "federal courts have an ever-present obligation to satisfy themselves of their subject matter jurisdiction and to decide the issue *sua*

---

[2]  "The district courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . (3) the district court has dismissed all claims over which it has original jurisdiction."  28 U.S.C. § 1367(c)(3).

[3]  Under the "Jurisdiction and Venue" section of the Complaint, Plaintiff also references causes of action under patent, copyright, and trademark laws, 28 U.S.C. § 1338 (Compl. ¶ 9(b)), and under the Trademark Act, 15 U.S.C. § 1121. (Compl. ¶ 9(c).)  The Complaint, however, contains no other references to these causes of action, and they are not pled under any particular count.

*sponte*."  Liberty Mut. Ins. Co. v. Ward Trucking Corp., 48 F.3d 742, 750 (3d Cir. 1995); see also U.S. Express Lines, Ltd. v. Higgins, 281 F.3d 383, 388-89 (3d Cir. 2002) (recognizing the duty of federal courts to examine their subject matter jurisdiction at all stages of the litigation *sua sponte* if the parties fail to raise the issue).  This authority permits a court to find jurisdiction where it is obvious from the face of the Complaint, even if not specifically pled.  Averbach v. Rival Mfg. Co., 809 F.2d 1016, 1019 (3d Cir. 1987) (finding subject matter jurisdiction where plaintiff's complaint, on its face, satisfied requirements of diversity jurisdiction and diversity unquestionably existed, even though complaint only alleged jurisdiction on basis of 28 U.S.C. §§ 1331 and 1337); see also Geller v. Prudential Ins. Co. of Am., Civ. A. No. 96-0676, 2002 WL 1285538, at *1-2 (E.D.N.Y. Jun. 5, 2002) (noting that where the complaint pled only federal question and supplemental jurisdiction and that jurisdiction was questionable, it would consider whether diversity jurisdiction had been pled on the face of the complaint).

In this case, although Plaintiff pleads only federal question jurisdiction, the Court is bound to determine whether we may exercise subject matter jurisdiction on any other basis.  To satisfy diversity jurisdiction, under 28 U.S.C. § 1332, a plaintiff "must specifically allege each party's citizenship, and these allegations must show that the plaintiff and defendant are citizens of different states."  McCracken v. Murphy, 328 F. Supp. 2d 530, 532 (E.D. Pa. 2004) (quoting Am. Motorists Ins. Co. v. Am. Employers' Ins. Co., 600 F.2d 15, 16 (5th Cir. 1979)), aff'd 129 Fed. Appx. 701 (3d Cir. 2005).  Moreover, the statute mandates that an amount in controversy must exceed $75,000.  28 U.S.C. § 1332(a).  Normally, "[a] plaintiff bears the burden of proving that diversity of citizenship exists and ordinarily must prove diversity of citizenship by a preponderance

of the evidence." McCracken, 328 F. Supp. 2d at 532 (citing Krasnov v. Dinan, 465 F.2d 1298, 1301 (3d Cir. 1972)).

In the case at bar, the Complaint, on its face, clearly satisfies both elements.  First, there is complete diversity of citizenship between the parties.  Plaintiff is a Pennsylvania partnership, Defendant Eisaku Noro & Co, Ltd. is a Japanese Corporation with its principal place of business in Japan, Defendant Knitting Fever, Inc. is a New York Corporation with its principal place of business in New York, Defendants Sion and Diane Elalouf are citizens of New York, and Defendant Jay Opperman is a citizen of New Jersey.  (Compl. ¶¶ 3-8.)  Moreover, the Complaint explicitly asserts that the claim for damages exceeds $150,000, exclusive of interest and costs.  (Id. ¶ 12.)

While the Court would normally grant leave for Plaintiff to amend its Complaint and include an express invocation of diversity jurisdiction, judicial efficiency counsels us to forego such an unnecessary step.  Diversity jurisdiction is plain from the undisputed allegations of the Complaint.  Given that the Complaint adequately pleads subject matter jurisdiction, under 28 U.S.C. § 1332, we decline to dismiss the state law claims.

An appropriate order follows.

# IN THE UNTIED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| THE KNIT WITH, | : |
| | :    CIVIL ACTION |
|     Plaintiff, | : |
| | : |
|   v. | : |
| | : |
| EISAKU NORO & CO., LTD., | : |
| KNITTING FEVER, INC., | : |
| SION ELALOUF, DIANE ELALOUF, | :    NO. 08-4775 |
| and JAY OPPERMAN, | : |
| | : |
|     Defendants. | : |

## **ORDER**

**AND NOW**, this *19th* day of *December*, 2008, upon consideration of the Motion to Dismiss by Defendants Knitting Fever, Inc., Sion Elalouf, Diane Elalouf, Jeffrey J. Denecke, Jr., and Jay Opperman (collectively "Moving Defendants") (Doc. No. 5), the Response thereto of Plaintiff The Knit With (Doc. No. 6), Moving Defendants' Reply Brief (Doc. No. 8) and Plaintiff's Sur-reply Brief (Doc. No. 9), it is hereby **ORDERED** that the Motion is **GRANTED IN PART** and **DENIED IN PART** as follows:

1. Moving Defendants' Motion to Dismiss Plaintiff's cause of action under the Lanham Act, 15 U.S.C. § 1125(a)(1)(B) is **GRANTED**. Count III is **DISMISSED** as against Moving Defendants.

2. Moving Defendants' Motion to Dismiss Plaintiff's state law claims is **DENIED**;

It is so **ORDERED**.

BY THE COURT:

*s/ Ronald L. Buckwalter*
RONALD L. BUCKWALTER, S. J.