**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| THE KNIT WITH, | : | |
| | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| KNITTING FEVER, INC., | : | |
| DESIGNER YARNS, LTD., | : | |
| FILATURA PETTINATA V.V.G. DI | : | |
| STEFANO VACCARI & C., SION | : | NO.  08-4221 |
| ELALOUF, DIANE ELOUF, JEFFREY J. | : | |
| DENECKE, JR., JAY OPPERMAN, and | : | |
| DEBBIE BLISS, | : | |
| | : | |
| Defendants. | : | |

| | | |
|---|---|---|
| THE KNIT WITH, | : | |
| | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| EISAKU NORO & CO., LTD., | : | |
| KNITTING FEVER, INC., | : | |
| SION ELALOUF, DIANE ELALOUF, | : | NO.  08-4775 |
| and JAY OPPERMAN, | : | |
| | : | |
| Defendants. | : | |

**<u>MEMORANDUM</u>**

BUCKWALTER, S.J.                                                    June 27, 2012

Currently pending before the Court are (1) a Motion for Summary Judgment on Counts I

and II of Plaintiff's Complaint filed by Defendants Knitting Fever, Inc. ("KFI"), Sion Elalouf,

Diane Elalouf, Jeffrey J. Denecke, Jr., and Jay Opperman (collectively, "Defendants" or the "KFI

Defendants"); (2) Plaintiff The Knit With's ("TKW") Motion for Summary Judgment on the

Undisputed Factual Question of the 2005 Delivery of Cashmerinos; (3) the KFI Defendants'

Motion to Strike Exhibit 3 to Plaintiff's Motion for Summary Judgment; and (4) Plaintiff's

Motion to Strike Exhibit B to Defendants' Motion for Summary Judgment.   For the following

reasons, both of Plaintiff's Motions are denied and both of Defendants' Motions are granted.

I.      FACTUAL AND PROCEDURAL HISTORY

        The factual background of this case is one familiar to both the parties and the Court, and

has been reiterated in several of this Court's prior opinions.[1]  This matter arises between Plaintiff,

TKW, a small, family-owned and operated business retailing specialty yarns and accessories to

consumers, and Defendants (a) KFI, a New York corporation that imports and distributes

specialty yarns; (b) KFI's officers and directors, including Sion Elalouf, Diane Elalouf, Jay

Opperman, and Jeffrey J. Denecke, Jr.; and (c) Filatura Pettinata V.V.G. Di Stefano Vaccari & C.

("Filatura"), Debbie Bliss, and Designer Yarns, Inc. ("Designer Yarns"), all of whom are non-

U.S. entities that design, manufacture, and/or distribute speciality yarns.  At the core of the

dispute is Plaintiff's claim that KFI sold designer knitting yarns to TKW, representing that the

yarns contained a percentage of cashmere, which the yarns allegedly did not.

        Following extensive motion practice by both parties, the Court has dismissed multiple

claims and Defendants.  The sole claims remaining in this action are:  (1) breach of the express

warranty of merchantability against Defendants KFI, Sion Elalouf, and Jay Opperman; (2) breach

of the implied warranty of merchantability against Defendants KFI, Filatura, Sion Elalouf, and

Jay Opperman; (3) injury to business and property pursuant to the Racketeer Influenced and

---

[1]  See The Knit With v. Knitting Fever, Inc., No. Civ.A.08-4221, 2008 WL 5381349, at
*1–6 (E.D. Pa. Dec. 18, 2008); The Knit With v. Eisaku Noro, No. Civ.A.08-4775, 2008 WL
5273582, at *1–3 (E.D. Pa. Dec. 18, 2008); The Knit With v. Knitting Fever, Inc., Nos.
Civ.A.08-4221, 08-4775, 2011 WL 891871, at *1–2 (E.D. Pa. Mar. 10, 2011).

Corrupt Organization Act ("RICO"), 18 U.S.C. § 1962 against Defendant Sion Elalouf; (4)

conspiracy to cause injury to business and property pursuant to RICO, 18 U.S.C. §1962(d)

against Defendants Sion Elalouf and Jay Opperman; and (5) a piercing the corporate veil

allegation against Defendants KFI, Sion Elalouf, and Diane Elalouf.  In addition, the KFI

Defendants have counterclaims for defamation, tortious interference with existing and

prospective contracts, and trade libel.

On March 16, 2012, the KFI Defendants filed the current Motion for Summary Judgment

on Counts I and II of Plaintiff's Complaint.  Plaintiff responded on April 2, 2012 and Defendants

filed a Reply on May 21, 2012.  On March 30, 2012, Plaintiff filed its current Motion for

Summary Judgment on the Undisputed Factual Question of the 2005 Delivery of Cashmerinos,

Defendants responded on April 16, 2012, Plaintiff filed a Reply Brief on May 21, 2012, and

Defendants submitted a Sur-reply on May 31, 2012.[2]  In conjunction with both of these Motions,

the parties have each filed a Motion to Strike an exhibit to the other party's summary judgment

brief.  All of these Motions are now ripe for judicial consideration.

## II.     STANDARD OF REVIEW

Summary judgment is proper "if the pleadings, the discovery and disclosure materials on

file, and any affidavits show that there is no genuine issue as to any material fact and that the

movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c)(2).  A factual dispute is

"material" only if it might affect the outcome of the case.  Anderson v. Liberty Lobby, Inc., 477

U.S. 242, 248 (1986).  For an issue to be "genuine," a reasonable fact-finder must be able to

---

[2]  Plaintiff filed a "Brief in Sur-reply Supporting Summary Judgment on the 2005 Cashmerino Delivery" on May 31, 2012.  This document constitutes Plaintiff's third brief on its Summary Judgment Motion—a filing that was not authorized by this Court's May 3, 2012 Order. Accordingly, the Court will not consider it.

return a verdict in favor of the non-moving party.  Id.

On summary judgment, the moving party has the initial burden of identifying evidence that it believes shows an absence of a genuine issue of material fact.  Conoshenti v. Pub. Serv. Elec. & Gas Co., 364 F.3d 135, 145–46 (3d Cir. 2004).  It is not the court's role to weigh the disputed evidence and decide which is more probative, or to make credibility determinations. Boyle v. Cnty. of Allegheny, 139 F.3d 386, 393 (3d Cir. 1998) (citing Petruzzi's IGA Supermkts., Inc. v. Darling-Del. Co. Inc., 998 F.2d 1224, 1230 (3d Cir. 1993)).  Rather, the court must consider the evidence, and all reasonable inferences which may be drawn from it, in the light most favorable to the non-moving party.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citing United States v. Diebold, Inc., 369 U.S. 654, 655 (1962)); Tigg Corp. v. Dow Corning Corp., 822 F.2d 358, 361 (3d Cir. 1987).  If a conflict arises between the evidence presented by both sides, the court must accept as true the allegations of the non-moving party, and "all justifiable inferences are to be drawn in his favor."  Anderson, 477 U.S. at 255.

Although the moving party must establish an absence of a genuine issue of material fact, it need not "support its motion with affidavits or other similar materials negating the opponent's claim."  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  It can meet its burden by "pointing out . . . that there is an absence of evidence to support the nonmoving party's claims."  Id. at 325.  Once the movant has carried its initial burden, the opposing party "must do more than simply show that there is some metaphysical doubt as to material facts."  Matsushita Elec., 475 U.S. at 586.  "[T]he non-moving party must rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument."  Berckeley Inv. Group. Ltd. v. Colkitt, 455 F.3d 195, 201 (3d Cir. 2006).  If the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case,

4

and on which that party will bear the burden at trial," summary judgment is appropriate.  Celotex, 477 U.S. at 322.  Moreover, the mere existence of some evidence in support of the non-movant will not be adequate to support a denial of a motion for summary judgment; there must be enough evidence to enable a jury to reasonably find for the non-movant on that issue.  Anderson, 477 U.S. at 249–50.

Notably, "[t]he rule is no different where there are cross-motions for summary judgment." Lawrence v. City of Phila., 527 F.3d 299, 310 (3d Cir. 2008).  As stated by the Third Circuit, "[c]ross-motions are no more than a claim by each side that it alone is entitled to summary judgment, and the making of such inherently contradictory claims does not constitute an agreement that if one is rejected the other is necessarily justified or that the losing party waives judicial consideration and determination of whether genuine issues of material fact exist."  Id. (quoting Rains v. Cascade Indus., Inc., 401 F.2d 241, 245 (3d Cir. 1968)).

## III.   DISCUSSION

Defendants' current Motion for Summary Judgment seeks dismissal of Counts I and II of the Complaint claiming that no delivery of any of the yarns in suit occurred within the statute of limitations, and thereby barring any cause of action for breach of warranty.  Plaintiff's concurrently-filed Motion for Summary Judgment submits that the record unequivocally supports a finding that a delivery of the yarns in suit occurred in 2005, meaning that Defendants' statute of limitations argument is meritless.  In addition, both parties move to strike exhibits to the opposing party's brief.  For clarity of discussion, the Court first considers the Motions to Strike filed by each party, and then turns to the substance of the two Motions for Summary Judgment.

**A.**     **Defendants' Motion to Strike Exhibit 3 of Plaintiff's Motion for Summary Judgment on the Factual Question of the 2005 Delivery of Cashmerinos**

Defendants first move to strike Exhibit 3—the Declaration of Dawn Casale—to Plaintiff's Motion for Summary Judgment on the Factual Question of the 2005 Delivery of Cashmerinos. Specifically, they contend that any statement Ms. Casale made about that delivery was based not on personal knowledge, but rather on inadmissible hearsay, and thus is not properly considered on summary judgment. Upon careful review of the parties' briefs, the Court must agree.

It is well-established that a declarant is not competent to testify to matters beyond his or her personal knowledge. See Fed. R. Evid. 602 ("A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter."). "Thus, the record must establish the personal knowledge of an affiant, or that affiant's declarations may not be considered on summary judgment." Fitzpatrick v. Nat'l Mobile Television, 364 F. Supp. 2d 483, 495 (M.D. Pa. 2005); see also Fed. R. Civ. P. 56(c)(4) (noting that the Court may reject an affidavit that fails to meet the personal knowledge requirement of Federal Rule of Civil Procedure 56(c)(4)).

As a general rule, declaration statements made based on hearsay statements by others should not be considered. Bouriez v. Carnegie Mellon Univ., No. Civ.A.02-2104, 2005 WL 2106582, at *9 (W.D. Pa. Aug. 26, 2005). Only if the hearsay statements fall within one of the established exceptions to the hearsay rule may they be factored into a summary judgment analysis. Id. at *8. Moreover, "hearsay evidence produced in an affidavit opposing summary judgment may be considered if the out-of court declarant could later present that evidence through direct testimony." Williams v. W. Chester, 891 F.2d 458, 466 n.12 (3d Cir. 1989). Notably, however, "[i]f an affiant must have personal knowledge, then certainly a hearsay

declaration set forth by the affiant must be based on personal knowledge." Fitzpatrick, 364 F.

Supp. 2d at 496.  Accordingly, the party seeking to introduce the hearsay statement "must ensure

that his evidence sets forth the basis for the affiant's personal knowledge." Id. at 497.

In the present case, Ms. Casale's statements regarding the alleged 2005 delivery of

Cashmerino yarn are not admissible on any grounds.  Her Declaration avers, "upon personal

knowledge," that "[i]n Summer 2005, KFI delivered 10 bags of *Cashmerino* to TKW; in the

ordinary course, the goods were opened and added to inventory.  When no invoice was received

for the *Cashmerinos*, inquiry to KFI determined the goods were shipped against TKW's

outstanding credit balance and that KFI does not invoice such shipments."  (Pl.'s Mot. Part.

Summ. J. on Issue of 2005 Delivery ("Pl.'s Mot."), Ex. 5, Decl. of Dawn Casale ("D. Casale

Decl.") ¶ 4, Feb. 2, 2011.)  Yet, during her October 2011 videotaped deposition, Ms. Casale

clearly admitted that she, in fact, had no such personal knowledge of the 2005 delivery:

> Q.   Ms. Casale, the court report has placed before you what's been marked as D-
>      5.  Is this another declaration that you submitted in connection with this
>      litigation?
> A.   Yes.
> Q.   And the first paragraph in part states that you make this declaration based
>      upon personal knowledge, correct?
> A.   Correct.
> . . .
> Q.   Please turn to paragraph four.  It says, In the summer of 2005, KFI delivered
>      ten bags of Cashmerino to TKW.  Do you understand TKW to be an acronym
>      for the Knit With?
> A.   Correct.
> Q.   You have no personal knowledge of that delivery, correct?
> A.   Vaguely.
> Q.   Well, what knowledge at all do you have?
> A.   That it was added and opened to our store inventory.
> Q.   Well, aside from reading in your declaration, what knowledge do you have
>      of this?
> A.   That that was the Cashmerino in question.
> Q.   And you didn't open that delivery, did you?
> . . .

A.      Yeah, I think that was Bill, Bill Giampa that had received that shipment.

Q.      So not you personally?

A.      Correct.

Q.      You were not there when the delivery was received, correct?

A.      Correct.

Q.      You did not open the goods, correct?

A.      Correct.

Q.      You did not personally add them to inventory, correct?

A.      Correct.

Q.      Of the ten bags delivered in summer of 2005, what were they?  Can you break them up between—whether it was Cashmerino, Aran, Baby.

A.      Me personally, no.  I mean, if I had the invoice I could.

(Defs.' Mot. to Strike, Ex. A, Dep. of Dawn Casale, 254:13–257:15:5, Oct. 24, 2011 ("D. Casale Dep.").)  Indeed, Ms. Casale admitted that during the time of the 2005 delivery, she was working full time at Mellon Bank as bank teller.  (Id. at 18:4–24, 20:11–23.)

Following this concession, Ms. Casale went on to explain that any knowledge of the alleged 2005 delivery came strictly from an out-of-court discussion with TKW employee Bill Giampa, as follows:

Q.      So, again, can you please tell me what personal knowledge you have of the alleged delivery in 2005?

A.      It was a discussion that I had with my brother—pardon me—with Bill.

Q.      And when did that discussion occur?

A.      Probably that night or there was a recollection conversation, do you remember what was in the box, something like that.

Q.      The Knit With has no purchase order for this delivery correct?

A.      That's what it says in my declaration, yes.

Q.      Do you recall what Mr. Giampa said about this delivery?

A.      Just that the yarn came in.

Q.      Do you recall him discussing other deliveries to The Knit With that summer?

A.      Not that I can remember.

Q.      So is there a reason why you remember him discussing this particular delivery?

A.      Just because it's the yarn that's in the suit.

Q.      So aside from the fact that that yarn is at issue in this litigation, is there any other reason that you recall that Mr. Giampa would have mentioned this delivery to you?

A.      No, it was Debbie Bliss and it was probably yarn that we were out of.  I don't

8

remember the exact reason why.

(D. Casale Dep. 257:16–259:5.)

Under Federal Rule of Evidence 801(c), Ms. Casale's repetition of Mr. Giampa's out-of-court statement constitutes hearsay because it is "offer[ed] in evidence to prove the truth of the matter asserted." Fed. R. Evid. 801(c). Plaintiff does not point to—nor can this Court find—any hearsay exception enumerated by the Federal Rules of Evidence that would allow this statement to be admitted at trial. Nor has Plaintiff established that the out-of-court declarant, Mr. Giampa, could later present that evidence through direct testimony. Indeed, during his deposition, Mr. Giampa could not specifically recall any shipments that came without documents, let alone the alleged 2005 shipment of Cashmerino yarn:

> Q.    And when we were discussing shipments of yarns that you would unpack, were there ever any shipments that came without any documents at all?
> A.    I don't remember any specific, but there may have been a few, yes.
> Q.    In those instances, do you recall whether the Knit With did anything to obtain documents for the shipment?
> A.    We would—I would—if I had one without a packing last, I would write the yarns down and how many we got and then we would check check it against the invoice.

(Defs.' Mot. to Strike, Ex. B., Dep. of William Giampa, 50:5–22, Oct. 20, 2011 ("Giampa Dep.").)

Attempting to dodge this hearsay obstacle, Plaintiff now argues that Mr. Giampa's inability to recall a delivery occurring almost six years earlier does not mean he had no personal knowledge of that delivery. This argument, however, fails to resolve the core problem. "[A]s Federal Rule of Civil Procedure 56 clearly states, Plaintiff must ensure that his evidence sets forth the basis for the affiant's personal knowledge." Fitzpatrick, 364 F. Supp. 2d at 496–97. "[T]he mere possibility that hearsay statement will be presented in the form of admissible

evidence at trial does not warrant consideration of hearsay evidence at the summary judgment stage." Bouriez, 2005 WL 2106582, at *9 (quotations omitted). Despite this standard, Plaintiff has not proven that Mr. Giampa will be able to take the stand and testify either that he specifically recalls receiving and opening the alleged 2005 delivery from Defendants or that he told Ms. Casale about the 2005 delivery. Indeed, Plaintiff has failed to either (a) identify deposition testimony wherein Mr. Giampa discusses the 2005 delivery of the yarns in suit; (b) submit an affidavit from Mr. Giampa attesting to the fact that he received a 2005 delivery of Cashmerino from KFI; or (c) provide documents by which Mr. Giampa could potentially refresh his recollection. As Plaintiff has no competent evidence to satisfactorily explain whether and how Mr. Giampa knew that there was a 2005 delivery of Cashmerino yarns from Knitting Fever, Inc., the Court is constrained to find that Ms. Casale's Declaration that echoes a purported statement from Mr. Giampa to her about that alleged delivery is not admissible.

Attempting to avoid having this crucial Declaration stricken from the record, Plaintiff relies on two legal principles, neither of which are applicable to the present matter. First, Plaintiff argues that under Pennsylvania statutory and common law, each partner in a partnership is an agent of the partnership for the purpose of its business and each member of a partnership has personal knowledge of matters known to every other partner. (Pl.'s Resp. Opp'n Mot. to Strike 3 (citing 15 Pa. Cons. Stat. § 8321; Stockwell v. United States, 80 U.S. 531 (1871); Adams v. Ashman, 53 A. 375 (Pa. 1902); Engl v. Berg, 511 F. Supp. 1146 (E.D. Pa. 1981)). Based on this principle, Plaintiff contends that "the law imputes to Ms. Casale personal knowledge of events and transactions affecting the partnership. Ms. Casale's Declaration sets forth her knowledge or memory of events occurring in 2005. The statements are based upon her personal knowledge as a matter of law irrespective of whether she was present to observe the

10

events."  (Id. at 4.)

Plaintiff's argument misunderstands the law of imputed knowledge with respect to Pennsylvania partnerships.  The general rule is that "under the law of partnerships, knowledge and actions of one partner are imputed to all others."  Henkels & McCoy, Inc. v. Adochio, No. Civ.A.94-3958, 1997 WL 5268, at *6 (E.D. Pa. Jan. 6, 1997), aff'd, 138 F.3d 491 (3d Cir. 1998); see also Engl v. Berg, 511 F. Supp. 1146, 1154 (W.D. Pa. 1981) ("[I]t is well established that under the law of partnerships, knowledge and actions of one partner are imputed to all others."). Moreover, a partnership is "an agent for its individual partners and the acts of any partner or the partnership itself can be imputed to all the other partners."  Basciano v. L&R Auto Parks, Inc., No. Civ.A.11-1250,  2011 WL 6372455, at *5 (E.D. Pa. Dec. 20, 2011).  Plaintiff, however, fails to establish that any other partner of TKW had personal knowledge regarding the business or the 2005 delivery,[3] which could be imputed to Ms. Casale.  Moreover, nothing in any Pennsylvania law provides, as Plaintiff argues, that a partner automatically has personal knowledge of an event occurring within a partnership irrespective of whether the partner can testify as to the basis for that knowledge.  To apply such a rule would complete eviscerate, without legal basis, the principle that a declaration must be based on personal knowledge.

Alternatively, Plaintiff asserts that Ms. Casale's declaration is "not hearsay" because "[p]ursuant to Evidence Rule 801(d)(1)(B), a statement which is consistent with the declarant's testimony is defined as 'not hearsay' when the statement is made to rebut a recently fabricated statement of a party opponent."  (Pl.'s Resp. Opp'n Mot. to Strike 4.)    According to Plaintiff,

---

[3]  In fact, James Casale's own Declaration as "Plaintiff's Representative" avers that he "was informed" that TKW "received a shipment of Debbie Bliss Cashmerino Yarns without any invoicing."  (Defs.' Mot. Summ. J. on Counts I and II ("Defs.' Mot."), Ex. C, Decl. of James Casale ("J. Casale Dep.") ¶ 15, Apr. 22, 2010.)  As such, he admits his own lack of personal knowledge regarding this shipment.

11

because Ms. Casale's Declaration was directed to rebut Defendants' purportedly fabricated Declaration by Jeffrey J. Denecke that he was "mistaken" when ascertaining the facts concerning the 2005 deliveries, TKW does not need to rely upon a hearsay exception for the Court to consider her statements.

Again, Plaintiff misapprehends this evidentiary rule.  Federal Rule of Evidence 801(d)(1)(B) states that a statement is not hearsay if "[t]he declarant testifies at the trial and is subject to cross-examination about a prior statement, and the statement . . . (B) is consistent with the declarant's testimony and is offered to rebut an express or implied charge ***that the declarant*** recently fabricated it or acted from a recent improper influence or motive in so testifying."  Fed. R. Evid. 801(d)(1)(B) (emphasis added).  "In other words, the prior consistent statement of a witness may only be introduced into evidence against a party who has made a direct or implied charge that the witness is not credible."  <u>United States v. Asher</u>, 854 F.2d 1483, 1506–07 (3d Cir. 1988).  By its plain language, this Rule allows for the admission at trial of prior testimony or a statement from a witness when that particular witness's credibility has been challenged by the opposing party, *i.e.* if Ms. Casale's credibility or motives are questioned at trial, Plaintiff's counsel could introduce a prior consistent statement from her.  It is not, as Plaintiff presupposes, for a witness—in this case, Ms. Casale—to rebut the testimony of an entirely different witness—in this case, Jeffrey Denecke.

In short, the Court finds that Ms. Casale's Declaration statements regarding the alleged 2005 delivery of Cashmerino yarns to TKW are based not on personal knowledge, but rather upon inadmissible hearsay statements.  In light of Plaintiff's failure to provide a viable basis on which the Court could admit these hearsay statements, the Court has no choice but to strike such

portions of the Declaration.[4]  Accordingly, the Court strikes paragraph four of the Declaration of

Dawn Casale, attached as Exhibit 3 to Plaintiff's Motion for Summary Judgment on the Factual

Question of the 2005 Delivery of Cashmerinos.[5]

      **B.**      **Plaintiff's Motion to Strike Exhibit B to Defendants' Motion for Summary Judgment for Breach of Warranty**

In a concurrently-filed motion, Plaintiff seeks to strike Exhibit B—the 2010 Declaration

of Jeffrey J. Denecke—to Defendants' Motion for Summary Judgment on Counts I and II of the

Complaint.  By way of background, on October 19, 2006, Defendant Jeffrey Denecke, Manager

of Operations for KFI, published a post on www.knittersreview.com in one of the site's forums

discussing yarn recall.  (Pl.'s Mot. to Strike, Ex. 2.)  In that post, Mr. Denecke addressed TKW's

publicized recall of Cashmerino yarn and wrote, in part, the following:

> Over the past five years, KFI sold The Knit With a grand total of 94 bags of products
> containing cashmere, as follows:
>
> 2002 – 4 bags of Debbie Bliss Cashmerino Aran;

---

[4]  In any event, Ms. Casale's affidavit may be barred under the sham affidavit doctrine. That doctrine generally "refers to the trial courts' practice of disregarding an offsetting affidavit that is submitted in opposition to a motion for summary judgment when the affidavit contradicts the affiant's prior deposition testimony."  Baer v. Chase, 392 F.3d 609, 624 (3d Cir. 2004) (internal quotation marks omitted).  As noted by the Third Circuit, however, there is "no principle that cabins sham affidavits to a particular sequence."  In re CitX Corp., Inc., 448 F.3d 672, 679 (3d Cir. 2006).  Rather, an affidavit may be nullified by subsequently-given, contradictory deposition testimony.  Id.

[5]  Defendants also seek costs in connection with this Motion on the grounds that Plaintiff's resubmission of Ms. Casale's Declaration—despite her deposition testimony that she lacked personal knowledge of the delivery—demonstrates a lack of candor towards the Court. Certainly, the Court is troubled not only by the submission of this Declaration in connection with the Summary Judgment Motion, but also by Plaintiff's flagrant distortion of the law in its Response to Defendants' Motion to Strike.  Nonetheless, the Court finds that the striking of this evidence is sufficient to send the appropriate message that such continued litigation techniques will not be tolerated.

> 2003 – 24 bags of Debbie Bliss Cashmerino Aran;
> 20 bags of Debbie Bliss Baby Cashmerino
> 15 bags of Noro Lotus
> 2004 – 26 bags of Debbie Bliss Cashmerino Aran
> ***2005 – 10 bags of Debbie Bliss Baby Cashmerino***
> 2006 – No products.
>
> On average, that's less than 19 bags per year!  Or, just 12 sweaters per year!  Or, merely $800 in sales per year!  Not per season, but per year!  Any way you look at it, we're not talking about a massive recall by any means.

(Id. (emphasis added).)  Thereafter, on April 1, 2010, Mr. Denecke authored a Declaration (the "Denecke Declaration"), wherein he retracted the foregoing highlighted potion of his web posting, as follows:

3.      On October 19, 2006, I posted a letter at the Knitter's Review website in response to allegations published to the trade by The Knit With.

4.      In this letter, I listed, by year, the number of bags of Cashmerino yarns sold by Knitting Fever, Inc. to The Knit With.

5.      While this list recites the sale of 10 bags of Baby Cashmerino as occurring in 2005, I subsequently discovered that this was a misstatement.

6.      At the time I composed this letter, I had reviewed certain sales records in which The Knit With's customer account number (as assigned by Knitting Fever, Inc.) had been superimposed over the transaction date by a printer error.

7.      Because I hadn't noticed this error at the time, I misread the 2004 transaction date as occurring in 2005.

8.      I subsequently discovered this error when reviewing the sales records upon which I had relied when composing the October 19, 2006 letter.

9.      In further confirmation of this error, I have since examined all of Knitting Fever, Inc.'s sales records pertaining to The Knit With, and I have been unable to locate any records of purchases of Baby Cashmerino by The Knit With in 2005.

10.     In reviewing the list of purchases contained in the October 19, 2006 letter, I note that The Knit With's purchase of 10 bags of Baby Cashmerino on June 22, 2004 was *not* otherwise accounted for in that list.

11.     I am personally familiar with the foregoing facts and the same are true and correct to the best of my knowledge, information and belief.  The allegations and statements made herein were made with the knowledge that willful false statements are punishable by fine or imprisonment, or both, under Section 1001 of Title 18 of the United States Code.

14

(Defs.' Mot. Summ. J. on Counts I & II, Ex. B, Decl. of Jeffrey J. Denecke, Jr. ¶¶ 3–11, Apr. 1, 2010 ("Denecke Decl.").)

Plaintiff now seeks to have this Declaration stricken on several grounds.  First, it contends that the statement is "submitted without the minimal sponsorship of admissibility by Defendant's counsel."  (Pl.'s Mot. to Strike 2.)  Second, it asserts that the Denecke Declaration is unsworn since it purports to be made pursuant to 18 U.S.C. § 1001, instead of the appropriate statute of 28 U.S.C. § 1746.  Third, it claims that the statement violates Federal Rule of Civil Procedure 56(e) because Defendants withheld from the Court the records Mr. Denecke allegedly reviewed to determine that his October 2006 website post was in error.  Finally, Plaintiff avers that the Denecke Declaration is incurable hearsay because it references out-of-court written statements that are otherwise inadmissible.

All of these arguments are unavailing.  As a primary matter, the Court takes note that Defendants filed a new Declaration from Mr. Denecke on April 16, 2012 (Docket No. 365), correcting—and in turn mooting—many of the alleged deficiencies identified by Plaintiff (the "Revised Denecke Decl.").  In this revised document, Mr. Denecke now avers that the statement is made pursuant to 28 U.S.C. § 1746.  Further, he attaches the precise records he relied on when (1) originally posting the 2006 website statement, and (2) determining that he erred in his 2006 statement.[6]

---

[6] Plaintiff's Reply Brief in Support of its Motion for Summary Judgment on Counts I and II seems to object to the use of this Declaration since it was not produced in discovery.  (Pl.'s Reply Br. 4.)  Mr. Denecke, however, is a named Defendant who has been timely identified as a witness in this case.  Plaintiff has had the opportunity to depose him.  Accordingly, Plaintiff has no legal foundation on which to object to his Revised Declaration.

15

Moreover, considered individually, none of Plaintiff's arguments have merit.  With respect to the first contention, Plaintiff does not cite to, and the Court is not aware of, any rule that requires that a declaration be sponsored by counsel.  Rather, Federal Rule of Civil Procedure 56(c)(4) provides that "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."  Fed. R. Civ. P. 56(c)(4).  Mr. Denecke's Declaration sets out admissible facts based on Mr. Denecke's personal knowledge, and is made under penalty of perjury.  As such, it comports with Rule 56.

As to the second contention, Plaintiff correctly observes that the original Denecke Declaration mistakenly states that it is made pursuant to 18 U.S.C. § 1001 because that statute "does not apply to a party to a judicial proceeding, or that party's counsel, for statements, representations, writings or documents submitted by such party or counsel to a judge or magistrate in that proceeding."  18 U.S.C. § 1001(b).  Nonetheless, as previously noted, the Revised Denecke Declaration expressly provides that Mr. Denecke "declare[s], pursuant to 28 U.S.C. § 1746, under penalty of perjury under the laws of the United States of America that the foregoing statements are true and correct."  (Revised Denecke Decl. ("Rev. Denecke Decl.") 3.)  Such an amendment cures the deficiency cited by Plaintiff.

Plaintiff's third contention—that the statement violates Federal Rule of Civil Procedure 56(e) because Mr. Denecke withholds from the Court the records he allegedly reviewed to determine that his October 2006 website post was in error—is equally meritless.  Rule 56(e) states:

If a party fails to properly support an assertion of fact or fails to properly address

> another party's assertion of fact as required by Rule 56(e), the court may:
> (1) give an opportunity to properly support or address the fact;
> (2) consider the fact undisputed for purposes of the motion;
> (3) grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it; or
> (4) issue any other appropriate order.

Fed. R. Civ. P. 56(e). Nothing in any reasonable reading of this language requires, as Plaintiff argues, that the Denecke Declaration disclose the records by which Mr. Denecke determined his October 2006 statement to be a misstatement concerning facts occurring in 2005. Moreover, even assuming that some rule existed requiring Defendants to file the underlying documents as a prerequisite to the Court's consideration of the Declaration, Defendants have produced all such documents either with previous court filings or with the Revised Denecke Declaration. Accordingly, any concern expressed by Plaintiff is baseless.

Finally, Plaintiff's vehement argument that the Denecke Declaration is incurable hearsay finds absolutely no legal support. Plaintiff contends that the Denecke Declaration relies on out-of-court written documents containing an alleged printer error and that such documents are hearsay. This allegation clearly misunderstands hearsay principles. First, as noted above, Mr. Denecke may rely on hearsay statements, as long as Defendants prove that those statements would be admissible at trial. See Barr v. Cnty. of Clarion, 417 F. App'x 178, 180 n.4 (3d Cir. 2011) (holding that a non-moving party's evidence must only be convertible to admissible form at trial in order to survive summary judgment); Gen. Refractories Co. v. First State Ins. Co., No. Civ.A.04-3509, 2012 WL 1285901, at *2 (E.D. Pa. Apr. 13, 2012) (same). By repeatedly producing the relied-upon documents to the Court, attached either to various motions or pleadings or to the Revised Denecke Declaration, Defendant has clearly met its burden of

17

showing that such documents will be admissible at trial.  Second, nothing in the Denecke

Declaration reveals that it contains any hearsay at all.  Mr. Denecke, speaking directly from his

own personal knowledge, explains why he originally thought there was a sale of Cashmerino

yarns in 2005 and how he concluded that there was, in fact, no such sale.  He does not reference

the various records for the truth of the matter asserted therein[7]—*i.e.*, they are not being produced

to show that a sale did or did not occur in 2005— but rather to show the effect upon Mr.

Denecke's knowledge in the relevant time period and the reason he made an error.  Because they

are not hearsay under Federal Rule of Evidence 801(c), Plaintiff's hearsay objection is

unfounded.

In sum, Plaintiff offers no valid basis upon which to exclude the Denecke

Declaration—which has now been superseded by the Revised Denecke Declaration—from

consideration on summary judgment review.  Accordingly, the Court will deny Plaintiff's Motion

to Strike.

**C.   Cross-Motions Regarding the Alleged 2005 Delivery of Cashmerino Yarn by Knitting Fever, Inc. to The Knit With**

Having disposed of the evidentiary motions, the Court now turns to the crucial

inquiry—whether the present breach of warranty actions were brought within the applicable

statute of limitations.  Pennsylvania law holds that "[u]nless excluded or modified . . . a warranty

that the goods shall be merchantable is implied in a contract for their sale if the seller is a

merchant with respect to goods of that kind."  13 Pa. Cons. Stat. § 2314(a).  Goods are

---

[7]  Under Federal Rule of Evidence 801(c), "hearsay" means "a statement that: (1) the declaration does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement."

"merchantable" only when they, *inter alia*,  "pass without objection in the trade under the contract description," "are fit for the ordinary purposes for which such goods are used," and "are adequately contained, packaged, and labeled as the agreement may require."  Id. § 2314(b); see also Visual Commc'ns, Inc. v. Konica Minolta Bus. Solutions U.S.A., Inc., 611 F. Supp. 2d 465, 469 (E.D. Pa. 2009).

The statute of limitations for a breach of warranty is four years.  13 Pa. Cons. Stat. § 2725(a).  It begins to run when tender of delivery of the allegedly defective product occurs, "regardless of the aggrieved party's lack of knowledge of the breach."[8]  Id. § 2725(b); see also McCracken v. Daimler Chrysler Motors Co. LLC, No. Civ.A.07-2202, 2008 WL 920344, at *4 (E.D. Pa. Apr. 3, 2008) ("[A] breach of warranty action accrues on, and suit must be filed within four years of, the date the seller tenders delivery of the goods, even if the breach is not apparent until after delivery has been tendered.") (quoting Nationwide Ins. Co. v. Gen. Motors Corp., 625 A.2d 1172 (Pa. 1992)).  Notably, when a defendant asserts a statute of limitations defense on a motion for summary judgment, the defendant bears the burden of proving that defense.  Richard B. Roush, Inc. Profit Sharing Plan v. New England Mut. Life Ins. Co., 311 F.3d 581, 585 (3d Cir. 2002).

The present litigation was commenced on September 8, 2008.  Accordingly, any deliveries of hand-knitting yarns to Plaintiff made prior to September 8, 2004 fall outside the

---

[8]  Only where the warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance does the cause of action accrue when the breach is or should have been discovered.  13 Pa. Cons. Stat. § 2725(b).  There is no such explicit extension of the warranty at issue in this case.

four-year limitations period applicable to breach of warranty claims under Pennsylvania law.[9]
The last *agreed-upon* delivery of Cashmerino yarn from KFI to TKW occurred prior to
September 8, 2008.  TKW now contends, however, that there was one additional delivery of
Cashmerino in the summer of 2005, on which the breach of warranty causes of action could
proceed.  The pending Motions seek summary judgment on the precise issue of whether the
alleged 2005 delivery actually occurred.

In support of their position that no delivery of Cashmerino yarn occurred in 2005,
Defendants rely on several arguments.  First, they assert that all of the invoices produced in
discovery show no sale of Cashmerino yarn after June 22, 2004, with the latest delivery occurring
on July 29, 2004.  (Defs.' Mot., Ex. A.)  Second, they produce the admissible Declaration of
KFI's Director of Operations, Jeffrey Denecke, who avers that he examined all of KFI's sale
records pertaining to TKW and could not locate any records of purchases of Baby Cashmerino by
TKW in 2005.  (Rev. Denecke Decl. ¶¶ 12–13.)  Finally, Defendants point to the complete
absence of evidence—*i.e.*, invoices, packing lists, shipping records, inventory records, emails,

---

[9] Plaintiff's Reply Brief in Support of Summary Judgment on the Factual Question of the
2005 Delivery of Cashmerino argues, in cursory fashion, that "the Court is authorized to toll
application of the four-year limitations on breach of warranty actions in instances of fraud."  (Pl's
Reply Br. 7.)  In support of this proposition, Plaintiff cites only to 13 Pa.C.S. § 2725(5), and
argues that it invokes Defendants' fraud to toll the four-year limitations period for the pre-2005
deliveries.

Notably, however, the statutory section cited by Plaintiff does not exist.  Moreover,
nothing in § 2725 stands for the proposition that fraud can toll the four-year limitations period for
warranty actions.  Quite to the contrary, the statute states that "[a] cause of action accrues when
the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach."  13 Pa.
Cons. Stat. § 2725(b).  Plaintiff points to no case law or statutory provisions that provide that this
statute of limitation may be tolled by some unspecified fraud.  Accordingly, the Court
conclusively finds that Plaintiff has no viable cause of action for any deliveries of the yarns in
suit that occurred prior to September 8, 2008.

photographs, postmarked boxes or other shipping containers, notes, or any other documents or electronically stored information of any kind—showing a 2005 purchase or delivery of any of the yarns in suit.  Accordingly, Defendants contend that no genuine issue exists as to the non-occurrence of any sale or delivery of Cashmerino yarn in 2005.

In response, Plaintiff attempts to establish that—or alternatively create a genuine issue of material fact on the question of whether—a delivery of ten bags of Cashmerino yarn was made in 2005 and credited against an existing credit that TKW held with KFI.  To do so, Plaintiff relies on four separate pieces of evidence: (1) affidavits from James Casale and Dawn Casale; (2) evidence demonstrating Defendants' alleged failure to produce the relevant documents in discovery; (3) an internal KFI credit memorandum transferring Plaintiff's credit balance from Euro Yarns, Inc. to KFI; and (4) an internet blog posting written by Jeffrey J. Denecke, Jr.

None of these pieces of evidence suffice either to defeat Defendants' Motion for Summary Judgment or to establish Plaintiff's own entitlement to summary judgment.  First, the affidavits are of no import.  As explained in detail above, Dawn Casale's affidavit is not based on personal knowledge, but rather on the hearsay statement of an out-of-court declarant who is unable to testify to those same statements in court.  Accordingly, the Court has stricken this deposition and will not consider it on summary judgment review.  The other affidavit, from Plaintiff's principal James Casale, also has no evidentiary value with respect to the present issue. He avers only that "[i]n Summer, 2005 I was informed TKW received a shipment of Debbie Bliss Cashmerino yarns without any invoicing."  (Pl.'s Mot., Ex. 1, Decl. of James Casale ¶ 15, Apr. 22, 2010 ("J. Casale Decl.").)  By his own words, Mr. Casale has no personal knowledge about the receipt of the Cashmerino shipment in 2005, but rather "was informed" by some

unknown individual.  Thus, this Declaration fails to create any issue of fact regarding the 2005 shipment.

Second, Plaintiff claims that KFI has "evaded producing documents evidencing KFI's 2005 delivery."  (Pl.'s Mem. 2.)  In support, Plaintiff cites to Requests for the Production of Documents from December 2009, from Plaintiff to Defendants in which Plaintiff requested, "All documents possessed by or available to the Defendants, relating to Defendant's shipments to The Knit With."  (Pl.'s Mot., Ex. 4.)  Plaintiff then attaches this Court's Order of March 29, 2010, wherein the Court ruled, with respect to this and several other Requests, that upon the parties' execution of a mutually acceptable confidentiality agreement, Defendant KFI shall provide "any supplemental responses of confidential information."  (Pl.'s Mot., Ex. 5.)  Plaintiff relies on these filings to suggest that KFI failed to comply with the Court's discovery order and, in turn, failed to produce documents evidencing the 2005 delivery.

To make such an inference, however, requires an illogical leap of faith.  The Court recalls that, in connection with the referenced Motion to Compel, Defendants had already produced documents responsive to that particular document request, but had withheld some documents pending the entry of an appropriate confidentiality agreement.  The Court's subsequent Order was not a ruling that Defendants had improperly failed to comply with their discovery obligations in that regard, but merely that the parties should timely enter a confidentiality agreement, subsequent to which Defendants could produce any withheld responsive documents.  To the extent Defendants never produced any documents regarding a 2005 delivery, the Court cannot—as Plaintiff asks—make any reasonable inference that this resulted from an intentional effort to evade discovery regarding a 2005 shipment.  To do so would require sheer speculation

22

based on nothing more than unfounded assumptions.[10]  Rather, the only reasonable inference is that no such documents exist.

Plaintiff's third argument relies on a July 2005 KFI credit memo, which "corroborates the unrefuted testimony of TKW's witnesses of the receipt of a non-invoiced Cashmerino shipment in 2005."  (Pl.'s Mem. 2.)  This credit memo, however, merely shows a transfer of TKW's existing $456 credit with Euro Yarns to KFI on July 19, 2005.  (Pl.'s Mot., Ex. 7.)  Nothing in this document states that anything was ordered and shipped, let alone establishes that the shipment involved any of the yarns in suit.   Moreover, whereas Plaintiff—the party producing the document to the Court—provides no further explanation for this memo, Defendants offer great detail as what this document represents.  According to Mr. Denecke, at the end of 2004, TKW had a $36 credit with KFI and a $202.20 credit with KFI-affiliate Euro Yarns, Inc. ("Euro Yarns"), due to the overpayment for some goods.  (Rev. Denecke Decl. ¶ 15.)  On January 14, 2005, TKW paid $917 to Euro Yarns for $875 worth of goods, thus adding $42 to TKW's Euro Yarns credits, for a total of $244.20.  (Id. ¶ 16.)  On March 31, 2005, TKW used $13.50 of its Euro Yarns credit to purchase books.  (Id. ¶ 17.)  On May 1, 2005, TKW wrote a $162 check to KFI, a $400 check to KFI-affiliate Elizabeth Austen, Inc. ("Elizabeth Austen"), and a $399.30 check to Euro Yarns, Inc. for the prepayment of goods.  (Id. ¶ 18.)  TKW used the $162 check to purchase $114 worth of books, resulting in an additional $48 credit with KFI.  (Id. ¶ 19.)  The

---

[10]  Plaintiff's Reply Brief makes multiple cursory and ill-explained contentions that Defendants actively withheld numerous documents in discovery.  (Pl.'s Reply Br. 4-5.)  These discovery violations have already been dealt with by the Special Master in this case.  Moreover, the Court finds that none of these arguments have any merit or bearing on the present action. Indeed, careful review of Plaintiff's somewhat confusing arguments fails to reveal any document regarding the 2005 delivery that should have been produced, but was not.

$400 check to Elizabeth Austen was used by TKW to buy $374.13 worth of Maggi yarns, leaving an additional $25.87 credit. (Id. ¶ 20.) Elizabeth Austen then wrote off the $4.13 in shipping because TKW prepaid, resulting in a $30 worth of credit. (Id. ¶ 21.) That $399.30 pre-payment was added to Plaintiff's existing $230.70 credit with Euro Yarns, giving TKW $630 in credits. (Id. ¶ 22.) In May and June of 2005, TKW ordered $84 in books from KFI and $210 in Mondial Splendid yarn from KFI, and both invoices were left as open/unpaid. (Id. ¶ 23.) In July of 2005, the $456 of credits were transferred from Euro Yarns to KFI, thus resulting in the credit memo at issue here. (Id. ¶ 24.) This $456 was combined with the $48 in credits already existing with KFI, giving TKW a total of $504 KFI credits. (Id. ¶ 25.) Mr. Denecke now avers that $294 of these credits were used for the books and Modial Splendid Yarn purchased in May and June, and the remainder used for an additional purchase of Maggi's Mist Slub yarn in July 2005, after which no credits remained with KFI or its related entities. (Id. ¶¶ 26–29.)

Plaintiff's multiple briefs—both in opposition to Defendant's Motion for Summary Judgment and in further support of its own Motion for Summary Judgment—provide absolutely no rebuttal or alternative explanation to this lengthy and detailed description by Mr. Denecke. Nor does Plaintiff dispute that this credit was applied to items other than the yarns in suit, as described by Mr. Denecke. In fact, the only testimony from Plaintiff regarding this credit memo was discussed and thoroughly rebutted in Defendants' Response in Opposition to Plaintiff's Motion for Summary Judgment.[11] Therefore, the Court finds that the credit memo does not

---

[11] Notably, Plaintiff does not even cite to or provide to the Court the testimony of its own principal James Casale regarding the meaning of this credit memo. Reviewing the portions of Mr. Casale's deposition transcript provided by Defendants, it becomes obvious why. When asked about this credit memo, James Casale had no real explanation for how it reflected a delivery of Cashmerino yarn in 2005:

constitute evidence of any 2005 delivery of Cashmerino yarn.

Having deemed the first three pieces of evidence offered by Plaintiff insufficient to create any genuine issue of material fact on the question of the 2005 delivery, the Court now turns to the last piece of evidence upon which Plaintiff relies—Mr. Denecke's 2006 internet posting,

---

> Q. Can you identify [this document]?
> A. Yes. This is a credit memo issued in the 19th of July, 2005 by Knitting Fever. And even though it says credit memo, it is—what it actually documents is a transfer of credits held on behalf of The Knit With by the Euro Yarns division of the Knitting Fever to Knitting Fever. And it is a document that came to us as a result of a delivery of unordered uninvoiced goods where I got on the phone with either Fritz or Eric and said, what are you guys doing? And you sent us ten bags of Cashmerino. There's no invoice. There's no nothing. We didn't order it. And I need some kind of paperwork that says to me that these goods came in, because in the absence of some kind of paperwork, I no longer have the ability to subtract the cost of these goods when our accountant is computing the revenues and expenses of The Knit With at the end of the year for tax purposes.

(J. Casale Dep. 344:3–345:7.)  Mr. Casale, however, later admitted that TKW had not filed tax returns for 2004 to 2007, thus undermining his testimony that he demanded the credit memo for end of year tax purposes. (Id. at 226:3–229:24.)  Mr. Casale also failed to explain why he accepted as sufficient this "credit memo" even though it failed to disclose any sale or delivery, or what specific goods were involved.  Moreover, Mr. Casale could not reconcile the $456 figure on the credit memo with the sale of ten bags of Cashmerino Baby, for which Plaintiff was paying at the time $42.50 per bag, other than accusing Defendant of "creative account[ing]." (Id. at 345:23–351:6.)  In short, the Court finds no evidence to corroborate that the credit memo was anything other than what it says it is—a memo transferring TKW's $456 credit from Euro Yarns to KFI.  Plaintiff, speaking through its principal James Casale, cannot simply turn an apple into an orange just by proclaiming it to be so.  Accordingly, this document fails to create any genuine issue of material fact.  See Componentone, L.L.C. v. Componentart, Inc., No. Civ.A.05-1122, 2008 WL 4790661, at *14 (W.D. Pa. Oct. 27, 2008) ("At the summary judgment stage, a party cannot stand on self-serving, largely unsupported conclusions to create a genuine issue of material fact for trial."); Romdhani v. Exxon Mobil Corp., No. Civ.A.07-715, 2010 WL 4682414, at *6 (D. Del. Nov. 10, 2010) ("Affidavits or deposition testimony setting forth unsupported facts or legal conclusions are insufficient to create a genuine issue of material fact so as to defeat summary judgment.") (citing Queer v. Westmoreland Cnty., 296 F. App'x 290, 294 (3d Cir. 2008); Secs. & Exchange Comm'n v. Bonastia, 614 F.2d 908, 914 (3d Cir. 1980) ("Denials in the form of legal conclusions, unsupported by documentation of specific facts are insufficient to create issues of material fact that would preclude summary judgment.")).

wherein he stated that KFI delivered ten bags of Cashmerino yarn to TKW in 2005. Notwithstanding Mr. Denecke's subsequent retraction of this statement, Plaintiff argues that this statement constitutes a direct admission by Defendants that a delivery occurred in 2005.

At first blush, the Court is somewhat troubled by the implications of this remark. To that end, the Court remains well aware that in determining the existence of any genuine issues of material fact, it is not the function of the trial court to weigh the evidence or evaluate its credibility. Anderson v. Liberty Lobby, 477 U.S. 242, 265 (1986). Rather, the court must draw all inferences in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, the court must accept the non-movant's version as true. Pastore v. Bell Tel. Co. of Pa., 24 F.3d 508, 512 (3d Cir. 1994).

Any hesitation caused by this 2006 remark, however, is quickly ameliorated by reference to Federal Rule of Civil Procedure 56 and the overwhelming evidentiary record before the Court. Under the Rule 56 standard, the "mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient [to defeat a Rule 56(c) motion]; there must be evidence on which the jury could reasonably find for the [non-movant]." Anderson, 477 U.S. at 252. "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." Id. at 247–48 (emphasis in original). "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Id. at 249–50 (internal citations omitted). "Thus, while the court should not 'weigh the evidence,' it

26

nonetheless must determine how one-sided the evidence is and how a 'fair minded jury' could reasonably decide the case." Taj Mahal Enters., Ltd. v. Trump, 745 F. Supp. 240, 245 (D.N.J. 1990) (citing Williams v. Borough of W. Chester, 891 F.2d 458, 460 (3d Cir. 1989)). "If the evidence is so one-sided that a reasonable jury could not find for the non-moving party, no genuine issue of material fact exists, and the motion for summary judgment should be granted." Id. (citing Anderson, 477 U.S. at 249–52). "Whether the quantum of circumstantial evidence in any particular case is enough to meet the [Anderson] standard sometimes requires us to make difficult, fact-specific, perhaps somewhat arbitrary judgments." Williams, 891 F.2d at 460–61.

The present matter is precisely the situation which the principles of Anderson and its progeny were designed to encompass. Defendants have provided the Revised Denecke Declaration, which unequivocally states, based on a review of all pertinent documents and invoicing, that no delivery of any yarn in suit was made by KFI to TKW in 2005. Moreover, Defendants have pointed to the complete absence of *any* documentary evidence—invoices, packing slips, shipping records, inventory records, emails, photographs, postmarked boxes or other shipping containers, or notes—reflecting this delivery. While Plaintiff attempts to attribute this void to Defendant's discovery failures, most prominent among the absent information is the lack of Plaintiff's own paperwork regarding this alleged delivery. Ms. Casale testified that the 2005 shipment was added and opened to Plaintiff's store inventory. (D. Casale Decl. 255:24–256:3.) Yet, Plaintiff has offered none of its own documents—inventory lists, store logs, or other written or electronic records—to substantiate her comment. Nor has Plaintiff been able to present the testimony of *any* witness who personally observed the delivery of the 2005 shipment of Cashmerino.

27

Thereafter, in both its own Motion for Summary Judgment and its Opposition to Defendants' Motion, Plaintiff relies on nothing more than inadmissible declarations based on mere hearsay, unsubstantiated accusations of discovery failures, an unrelated "credit memo" saying nothing about a 2005 delivery of any of the yarns in suit, and the 2006 web posting by Mr. Denecke.  While the 2006 Denecke remark is actual evidence supporting Plaintiff's position, it is completely refuted by the Revised Denecke Declaration.  That Revised Declaration explains that the web statement was based on a misreading of KFI's sales records, due to a printing error which superimposed the "5" in TKW's account number over the "4" in the date of delivery, making the year of delivery look like "2005" instead of "2004."  The Revised Denecke Declaration then attaches this document, which unequivocally reflects the veracity of his explanation.  Careful review of these sales records, with a cautious eye to avoid the printing error, indeed reveals that the disputed June 22nd delivery occurred in 2004, and not 2005.

Taking all of these factors in conjunction, the Court is constrained to find that no genuine issue of fact exists on the question of the 2005 delivery.  Absent the 2006 Denecke statement, the record would be devoid of evidence to suggest that any Cashmerino delivery to TKW occurred in 2005.  The 2006 statement alone simply does not rise above the "mere scintilla" standard, especially since it was explicitly recanted by its maker in a Declaration made under penalty of perjury and attaching the same records about which he previously spoke.  While this 2006 statement creates *some* factual dispute, it does not create a *genuine* factual dispute.  Stated differently, the evidence is so one-sided that no fair-minded jury could reasonably find in favor of Plaintiff on the issue of the delivery.  Having had years to engage to engage in discovery, and having previously been put on notice of this issue in prior dispositive motions filed by

Defendants, Plaintiff cannot simply avoid summary judgment by standing on a singular misstatement by one of the Defendants.

Accordingly, the Court must grant summary judgment on the fact that no 2005 shipment of any yarn in suit occurred.  Having so found, and in light of the fact that Plaintiff sets forth no other delivery of Cashmerino within the four year statute of limitations period, the Court must, in turn, grant judgment on the breach of warranty counts.[12]

## IV.   CONCLUSION

In sum, the Court finds that the current record requires several legal conclusions.  First, Defendants' Motion to Strike the portions of Dawn Casale's Declaration referencing the 2005 delivery must be granted.  Second, Plaintiff's Motion to Strike Jeffrey Denecke's Declaration and/or Revised Declaration must be denied.  Finally, given the absence of any genuine issue as to the existence of a 2005 delivery of Cashmerino yarn to TKW, Plaintiff's Motion for Summary Judgment on the Factual Question of the 2005 Delivery must be denied and Defendants' Motion for Summary Judgment on Counts One and Two of the Complaint must be granted.

---

[12]   In an alternative argument, Defendants contend that even if there were a 2005 shipment of goods to TKW, that shipment would not constitute a "sale of goods" for which a breach of warranty claim could be brought.  Specifically, they assert that "[a] prerequisite to an action for breach of warranty is that there must be a sale." (Defs.' Mem. 8 (citing Whitmer v. Bell Tel. Co. of Pa., 522 A.2d 584, 588 (Pa. Super. Ct. 1987)).  "A 'sale' consists in the passing of title from the seller to the buyer for a price." 13 Pa. Cons. Stat. § 2106.  Because Mr. Casale admitted in his deposition that the goods in the alleged 2005 shipment were unordered and never claimed that Plaintiff paid for these goods, Defendants assert that there is no evidence of payment meaning that no contract for the sale of goods can be established and no warranty can arise.

To address this argument, however, would require the Court to first presume that a delivery occurred in 2005.  Moreover, the Court would be required to address Plaintiff's contention that the credit memo discussed above shows that TKW paid for the goods through a use of an existing credit it maintained with KFI.  As the Court has already dismissed the breach of warranty claims on summary judgment grounds, this argument is now moot and need not be considered further.

Accordingly, judgment shall be entered in favor of Defendants and against Plaintiff on Counts I and II of the Complaint.